UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA G., )<br>)<br>    Plaintiff )<br>)<br>v.   )<br>)<br>MARTIN O'MALLEY, )<br>Commissioner of Social Security, )<br>)<br>    Defendant ) | No. 1:23-cv-00306-JAW |

REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal contends that the Administrative Law Judge (ALJ) erred in finding no severe physical impairments, rejecting vocational evidence concerning her need for a bariatric chair, and discounting disability decisions made by the U.S. Department of Veterans Affairs. *See* Plaintiff's Brief (ECF No. 7) at 6-20. I agree that the ALJ erred in rejecting the Plaintiff's bariatric chair evidence and, on that basis, recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.[1]

## I. Background

After this Court granted an unopposed motion by the Commissioner to vacate a 2019 decision on the Plaintiff's claim and remand this case, *see* Record at 3456-60, a new ALJ found that, from the Plaintiff's alleged onset date of disability, August 5,

---

[1] I need not and do not reach the Plaintiff's remaining points of error.

1

2016, through her date last insured for SSD benefits, December 31, 2018, *see id.* at 3361, she (1) had medically determinable impairments of depressive disorder and anxiety disorder, *see id.*, (2) retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels; perform simple tasks in a normal work schedule; interact appropriately with coworkers and supervisors in a normal work setting but not work with the public; and adapt to normal changes in a routine of non-public simple tasks, *see id.* at 3366, (3) could perform jobs existing in significant numbers in the national economy, *see id.* at 3372, and (4) therefore was not disabled, *see id.* at 3373. The Plaintiff elected not to request review of the ALJ's decision by the Appeals Council, *see* Plaintiff's Brief at 2, making that decision the final determination of the Commissioner as of sixty-one days after the May 3, 2023, date of notice of the unfavorable decision, *see* Record at 3356-57; 20 C.F.R. § 404.984(d).

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765,

769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III. Discussion

The Plaintiff's counsel asked James F. Conway, the vocational expert (VE) present at her hearing in 2019, whether an individual weighing approximately 285 pounds would require a bariatric chair. *See* Record at 3614. VE Conway requested that counsel specify a functional limitation. *See id*. The Plaintiff's counsel then explained:

> I suppose it is more of [an] engineering question, but typical office furniture is not designed for individuals in excess of . . . 250 pounds. . . . So, the question, for an individual that needs atypical office furniture, would you consider that an accommodation?

*Id*. VE Conway responded, "Yes." *Id*. Neither the Plaintiff's counsel nor the ALJ asked any further questions concerning the posited need for a bariatric chair. *See id*. at 3614-16.

Following that hearing, the Plaintiff's counsel submitted an affidavit of VE David Meuse stating, in relevant part:

> 18. Counsel informed me that [the Plaintiff] weighs approximately 285 pounds. She further informed me that the Vocational Witness testified that the need for an atypical office chair would be considered an accommodation. I agree.

> 19.   Typical office chairs are designed to hold individuals weighing up to 250 pounds. See Exhibit A (chairs "weight rated" from 225 to 250 pounds).[2]
>
> 20.   A person who weighs 285 pounds requires an accommodation in the form of a special oversize chair for all sedentary work and any light work where the employee did not spend the entire paid work day (typically 8 hours, less two paid 15 minute breaks, or a total of 7.5 hours) standing and/or walking (so that sitting occurred during some part of the work day).
>
> 21.   Typically such a chair (called a bariatric chair), such as those pictured in Exhibit B (attached), would be required for employees with a weight in excess of 250 pounds and up to 400 pounds, who would be unable to use standard office chairs on an ongoing basis either because they could not fit into the chair or their weight would break the chair.
>
> 22.   Counsel informed me that [the Plaintiff] sat in a standard chair during her hearing, rather than in a bariatric chair. In this case, therefore, the issue is not the width of a typical office chair, but the durability of such chairs. In my experience, standard office chairs can not consistently hold the weight of an individual of approximately 285 pounds without loss of structural integrity. Under these circumstances, standard office chairs tend to break, putting the employee at risk and creating additional expense and liability for the employer.
>
> 23.   Accordingly, [the Plaintiff] would require an accommodation.

*Id.* at 338-39, 343-45. The ALJ issued an unfavorable decision dated July 24, 2019, in which he did not mention the testimony of either VE Conway or VE Meuse concerning the asserted need for a bariatric chair. *See id.* at 15-28.

Post-remand, the case was assigned to a different ALJ, who held a hearing on April 20, 2023, and issued the decision at issue on May 3, 2023. *See id.* at 3359, 3374.

---

[2] Interestingly, VE Meuse opined in an earlier case that typical office chairs are designed to hold up to 275 pounds. *See Rebecca B. v. Saul*, No. 2:20-cv-00154-JDL, 2021 WL 1565402, at *3 (D. Me. Apr. 21, 2021) (rec. dec.), *aff'd*, 2021 WL 1996384 (D. Me. May 18, 2021).

4

The ALJ afforded the 2019 Meuse affidavit "little weight," *id.* at 3370, explaining, in relevant part:

> . . . [VE Meuse] noted the [Plaintiff] would need a bariatric chair, which is an accommodation.  This agency does not take the possibility of reasonable accommodation, such as a bariatric chair, into account (SSR 00-1c).  SSR 11-2p clarifies further that when the agency determines "whether a person can do other work that exists in the National economy, we do not consider whether he or she could do so with accommodations, even if an employer would . . . provide reasonable accommodations under the Americans with Disabilities Act of 1990."  Although SSR 11-2p concerns young adults, this agency has interpreted the SSR as applicable more broadly.  Vocational expert testimony concerning a bariatric chair may not supersede agency policy.  Finally, there was no testimony about the need for a bariatric chair and the [Plaintiff] weighed approximately 260 pounds for the period at issue, and his one page showing a chair capable of supporting 250 pounds does not establish that all "normal" office chairs are limited to that range.

*Id.*  The Plaintiff contends that these are not valid bases on which to reject that opinion.  *See* Plaintiff's Brief at 15-17; Plaintiff's Reply (ECF No. 14) at 9-10.  I conclude that the ALJ's reasoning for rejecting the affidavit is flawed in critical respects, requiring remand.

First, the ALJ mistakenly determined that agency policy regarding "accommodations" precluded him from considering the vocational evidence at issue.  It did not.  This Court has held that a claimant's "alleged need for a nonstandard bariatric chair—regardless of whether such a need might be called an accommodation—[is] relevant to her vocational prospects"—specifically, whether "the fact that [the claimant] exceeded the maximum capacity of a standard workplace chair would impact the number of jobs available to her," *Rebecca B.*, 2021 WL 1565402, at *3 (cleaned up).  *See also Joseph M. v. Kijakazi*, No. 2:23-cv-00226-NT,

5

at *2 (D. Me. Jan. 16, 2024) ("Whether a bariatric chair is an accommodation or an additional limitation . . . is not dispositive. . . . [T]he appropriate question" to be posed to a VE is "how the job numbers would be impacted if a person with [the claimant's] limitations needed bariatric seating." (cleaned up)), *aff'd*, 2024 WL 404017 (D. Me. Feb. 2, 2024).[3]

Second, in rejecting the Meuse affidavit, the ALJ mistakenly described the Plaintiff as weighing "approximately 260 pounds for the period at issue[.]" Record at 3370. The Plaintiff contends, and the Commissioner does not contest, that her weight "fluctuated in the 260[s] and 270[s] throughout the relevant period, reaching 286 a few months after" the relevant period ended. Plaintiff's Brief at 16; Commissioner's Brief (ECF No. 13) at 13; *see also* Record at 421 (recording a weight of 271 pounds on August 16, 2016, shortly after the Plaintiff's alleged onset date of disability); *id.* at 803 (recording a weight of 286.2 pounds on May 14, 2019, approximately four and a half months after the Plaintiff's date last insured for benefits).

Third, and finally, the ALJ improperly rejected the Meuse affidavit on the basis that "there was no testimony about the need for a bariatric chair." Record at 3370.

---

[3] This case illustrates the importance of the need to explore with the VE present at hearing the impact on job numbers of a need for an "accommodation" such as a bariatric chair, while preserving the claimant's option to submit rebuttal vocational evidence. During both the 2019 and 2023 hearings, neither the Plaintiff's counsel nor the ALJ posed any question to the VE concerning the impact of a need for a bariatric chair on job numbers, *see* Record at 3420-26, 3614-17, and VE Meuse did not address that issue in his post-hearing affidavit, *see id*. at 338-39. The record is therefore devoid of any evidence addressing that bottom-line question. As this Court has observed, claimants' counsel are expected to "explore vocational issues with the VE at the hearing rather than raise them in after-the-fact challenges." *John P. v. O'Malley*, No. 1:23-cv-00183-JDL, 2024 WL 1136774, at *2 (D. Me. Mar. 15, 2024) (rec. dec.) (cleaned up), *aff'd*, 2024 WL 1435096 (D. Me. Apr. 3, 2024). And the Commissioner, for his part, bears the burden at Step 5 of proving that a claimant retains the capacity to "perform jobs existing in significant numbers in the national economy[.]" *Keith H. v. Kijakazi*, No. 1:22-cv-00092-NT, 2023 WL 2326166, at *3 (D. Me. Mar. 1, 2023) (rec. dec.), *aff'd*, 2023 WL 2585677 (D. Me. Mar. 21, 2023).

VE Meuse supplied such "testimony" in his affidavit, *see* Meuse Aff. ¶¶ 20-21, 23, and the ALJ's statement that there was no such testimony suggests that he erroneously deemed VE Meuse unqualified to speak to that issue. *See Rebecca B.*, 2021 WL 1565402, at *4 (observing that this Court has "rejected an argument by the [C]ommissioner that only medical experts may opine on a claimant's need for a bariatric chair, determining that VEs may be qualified to opine on the issue based on their practical knowledge of the sort of chairs typically found in a workplace" (cleaned up)); *Donald M. v. Saul*, No. 2:20-cv-00364-JDL, 2021 WL 2589179, at *5 n.3 (D. Me. June 24, 2021) (rec. dec.) (deeming an ALJ's "finding that the record lack[ed] evidence that [a claimant] required a bariatric chair . . . unsupportable [when] Mr. Meuse's affidavit itself provide[d] that evidence"), *aff'd*, 2021 WL 3234591 (D. Me. July 29, 2021).

These errors of law and fact, particularly in combination, taint the ALJ's rejection of the Meuse affidavit, rendering that rejection unsupported by substantial evidence. That, in turn, undermines the ALJ's Step 5 finding that the Plaintiff retained the capacity to perform jobs existing in significant numbers in the national economy, requiring remand. *See, e.g., Joshua B. ex rel. Travis D. B. v. Saul*, No. 2:19-cv-00436-LEW, 2020 WL 6376639, at *5 (D. Me. Oct. 30, 2020) (rec. dec.) (holding that an ALJ's errors in preventing a claimant's counsel from questioning the VE at hearing concerning the need for a bariatric chair and failing to consider VE Meuse's post-hearing affidavit on the subject "undermine[d] the ALJ's Step 5 finding"), *aff'd*, 2020 WL 7395136 (D. Me. Dec. 16, 2020). On remand, the ALJ shall

reconsider the Meuse affidavit and, if necessary, seek vocational evidence on the impact of a need for a bariatric chair on job numbers.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: June 18, 2024

/s/ Karen Frink Wolf
United States Magistrate Judge